UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CHARLES REINHARDT, | : |
| Plaintiff, | : Case No. _____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CORTLAND BANCORP INC., HICHAM CHAHINE, JAMES E. HOFFMAN, III, JOSEPH E. KOCH, TIMOTHY K. WOOFTER, JAMES M. GASIOR, RICHARD B. THOMPSON, JOSEPH P. LANGHENRY, THOMAS P. PERCIAK, TIMOTHY CARNEY, DAVID C. COLE, NEIL J. KABACK, and ANTHONY R. VROSS, | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

---

Plaintiff Charles Reinhardt ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Cortland Bancorp ("Cortland" or the "Company") and the members of Cortland's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Cortland will be acquired by Farmers National Banc Corp.

("Farmers" or "FMNB") through FMNB's subsidiary FMNB Merger Subsidiary IV, LLC ("Merger Sub") (the "Proposed Transaction").

2. On June 23, 2021, Cortland and FMNB issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated June 22, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Cortland shareholder will be entitled to receive, at their election, either (i) 1.75 shares of FMNB common stock, or (ii) $28.00 in cash for each Cortland share they own, subject to proration such that 75% of the outstanding shares of Cortland common stock are converted into Farmers common shares (the "Merger Consideration"). The Proposed Transaction is valued at approximately $124.0 million.

3. On September 23, 2021, Cortland filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Cortland stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Cortland's and Farmers' financial projections, which are wholly omitted, and the data and inputs underlying the financial analyses performed by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler"); and (ii) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Cortland stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Cortland's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Cortland maintains and operates several retail branch offices in this district. Moreover, Cortland's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cortland.

9. Defendant Cortland is an Ohio corporation with its principal executive offices located at 194 West Main Street, Cortland, Ohio 44410. Cortland is the financial holding company for The Cortland Savings and Banking Company ("Cortland Bank" or the "Bank"). Cortland's shares trade on the Nasdaq Capital Market under the ticker symbol "CLDB."

10. Defendant Hicham Chahine ("Chahine") has been a director of the Company since 2019.

11. Defendant James E. Hoffman, III ("Hoffman") has been a director of the Company since 1984.

12. Defendant Joseph E. Koch ("Koch") has been a director of the Company since 2010.

13. Defendant Timothy K. Woofter ("Woofter") has been a director of the Company since 1985.

14. Defendant James M. Gasior ("Gasior") has been President, Chief Executive Officer ("CEO"), and a director of the Company and the Bank since 2009. Defendant Gasior previously served as Senior Vice President ("SVP"), Chief Financial Officer ("CFO"), and Corporate Secretary of the Company and the Bank from November 2005 to October 2009.

15. Defendant Richard B. Thompson ("Thompson") has been a director of the Company since 2001.

16. Defendant Joseph P. Langhenry ("Langhenry") has been a director of the Company since 2013.

17. Defendant Thomas P. Perciak ("Perciak") has been a director of the Company and the Bank since 2016.

18. Defendant Timothy Carney ("Carney") has been Executive Vice President ("EVP"), Chief Operating Officer ("COO"), and a director of the Company and the Bank since November 2, 2009. Defendant Carney also serves as the Secretary of the Company and the Bank, a position which he held from November 2009 to May 2015 and has held since September 2018. Defendant Carney also previously served as SVP, Chief Operations Officer of the Bank.

19. Defendant David C. Cole ("Cole") has been a director of the Company since 1989.

20. Defendant Neil J. Kaback ("Kaback") has been a director of the Company since 2004.

21. Defendant Anthony R. Vross ("Vross") has been a director of the Company since 2013.

22. Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23. FMNB is an Ohio corporation, with its principal executive offices located at 20 South Broad Street, Canfield, Ohio 44406.  FMNB is a financial holding company and was organized as a one-bank holding company in 1983 under the laws of the State of Ohio and registered under the Bank Holding Company Act of 1956, as amended (the "BHCA").  Farmers operates principally through its wholly-owned subsidiaries, Farmers Bank, Farmers Trust Company ("Farmers Trust") and Farmers National Captive, Inc. ("Captive").  Farmers National Insurance LLC ("Farmers Insurance") and Farmers of Canfield Investment Co. ("Farmers Investments") are wholly-owned subsidiaries of Farmers Bank.  National Associates, Inc. ("NAI") is a wholly-owned subsidiary of Farmers Trust.  Farmers and its subsidiaries operate in the domestic banking, trust, retirement consulting, insurance and financial management industries.  Farmers Bank is a full-service national banking association engaged in commercial and retail banking mainly in Mahoning, Trumbull, Columbiana, Stark, Wayne, Medina, Geauga and Cuyahoga Counties in Ohio and Beaver County in Pennsylvania.  FMNB's common stock trades on the Nasdaq Capital Market under the ticker symbol "FMNB."

24. Merger Sub is a wholly-owned subsidiary of Farmers.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

25.     Cortland was incorporated under the laws of the State of Ohio in 1984, as a one bank holding company registered under the BHCA. Cortland's principal activity is to own, manage and supervise Cortland Bank. Cortland owns all of the outstanding shares of Cortland Bank.

26.     Cortland Bank is a full service, state-chartered bank engaged in commercial and retail banking. Cortland Bank's services include checking accounts, savings accounts, time deposit accounts, commercial, mortgage and installment loans, night depository, automated teller services, safe deposit boxes and other miscellaneous services normally offered by commercial banks. Commercial lending includes commercial, financial loans, real estate construction and development loans, commercial real estate loans, small business lending and trade financing. Consumer lending includes residential real estate, home equity and installment lending. Cortland Bank also offers a variety of Internet and mobile banking options. Cortland Bank's full-service banking business is conducted at a total of thirteen offices, seven of which are located in Trumbull County, Ohio. The remaining offices are located throughout Portage, Summit, Cuyahoga and Mahoning Counties in Ohio. There is also a financial service center located in Fairlawn, Ohio, in Summit County.

27.     On July 27, 2021, the Company announced its second quarter 2021 financial results. Net income for the three months ending June 30, 2021 was $2.0 million, or $0.48 per share, a 3% increase compared to net income of $1.9 million, or $0.47 per share, for the first quarter of 2020. For the six months ending June 30, 2021 and 2020, earnings per share were $1.14 per share and $0.79 per share, with net income of $4.8 million and $3.3 million, respectively. Total deposits

grew by $29.2 million, or 4.5%, to $677.6 million for the second quarter of 2021 from $648.4 million in the second quarter of 2020. Commenting on the Company's financial results, defendant Gasior stated:

> The Bank's participation in the first and second rounds of the Paycheck Protection Program (PPP), which was part of the government's CARES Act, contributed to our financial performance but, more importantly, helped more than 600 total customers and saved nearly 8,000 local jobs. Accelerated loan fees recognized upon the forgiveness of PPP loans amounted to $390,000 and $890,000 for the three- and six-month periods ended June 30, 2021.
>
> The Company has benefited from the substantial reduction in interest rates nationally and the ongoing improvement in COVID-related conditions. With interest rates at all-time lows, the reduction in the cost of funds has mitigated margin compression.
>
> Performance was also aided year over year due to the increase in the provision for credit losses directly attributable to the COVID-19 pandemic in the second quarter 2020. Specifically, increases in the allowance for credit losses were recognized throughout 2020 in the qualitative factor allocations for specific concentrations of credit in various loan portfolio segments as a result of economic conditions. Elevated provisions occurred in each of the first three quarters of 2020 commensurate with COVID-related loan modifications. With substantially all of those loans now in full payment status, coupled with a reduction in nonperforming loans, no provision was necessary in the previous two quarters or in this current quarter.
>
> Thanks to additional government programs launched recently, businesses are able to tap those resources to make it through what is hopefully the tail end of this pandemic-stressed economy.

**The Proposed Transaction**

28.     On June 23, 2021, Cortland and FMNB issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> CANFIELD, Ohio and CORTLAND, Ohio, June 23, 2021 -- Farmers National Banc Corp. ("Farmers") (NASDAQ: FMNB), the holding company for The Farmers National Bank of Canfield ("Farmers National Bank"), and Cortland Bancorp Inc. ("Cortland") (NASDAQ: CLDB), the holding company for The Cortland Savings and Banking Company, jointly announced today they have entered into an agreement and plan of merger (the "Agreement").

Pursuant to the Agreement, each shareholder of Cortland may elect to receive either $28.00 per share in cash or 1.75 shares of Farmers' common stock, subject to an overall limitation of 75% of the shares being exchanged for Farmers shares and 25% for cash. Based on Farmers' closing share price of $16.87 on June 22, 2021, the transaction is valued at approximately $124.0 million or $29.14 per share. The merger is expected to qualify as a tax-free reorganization for those shareholders electing to receive Farmers' shares. The transaction is subject to receipt of Cortland shareholder approval and customary regulatory approvals. The transaction is intended to close in the fourth quarter of 2021.

At the close of the transaction, James M. Gasior, Cortland's President and CEO will join Farmers executive team as Senior Executive Vice President and Corporate Development Officer. Timothy Carney, Cortland's Executive Vice President and COO will join Farmers as Senior Executive Vice President and Chief Banking Officer. Furthermore, Farmers intends to name two directors from Cortland's Board to join its Board of Directors.

Kevin J. Helmick, President and CEO of Farmers, stated, "We are thrilled to announce the acquisition of Cortland and to have Jim and Tim join our executive management team. We have known and competed with Cortland for a long time and this acquisition will further solidify our market share in Trumbull and Mahoning Counties as well as expand our presence in the greater Cleveland area furthering our strategy of building local scale throughout Northeast Ohio."

"The combination with Farmers is a natural one. Our similar cultures and operating philosophies will help us deliver value and liquidity to our shareholders while enhancing the products we can offer our customers," said James Gasior.

"We are excited to join forces with a growing community bank to continue to serve our customers and communities in Northeastern Ohio," said Timothy Carney.

Upon consummation of the transaction, The Cortland Savings and Banking Company will be merged with and into Farmers National Bank and Cortland's branches will become branches of Farmers National Bank. Upon closing, Farmers estimates it will have approximately $4.1 billion in assets and 48 locations throughout Ohio and western Pennsylvania.

As of March 31, 2021, Cortland had total assets of $791.7 million, which included gross loans of $518.6 million, deposits of $680.3 million and equity of $81.1 million.

Raymond James & Associates, Inc. is serving as financial advisor to Farmers and Vorys, Sater, Seymour and Pease LLP is serving as legal counsel to Farmers on the transaction. Piper Sandler Companies is serving as financial advisor to Cortland and Grady & Associates is serving as legal counsel to Cortland on the transaction.

**Insiders' Interests in the Proposed Transaction**

29.     Cortland insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Cortland.

30.     Notably, certain Company insiders have secured positions for themselves with the combined company.  For example, the Merger Agreement provides that defendants Gasior and Carney will serve on the board of the combined company.  Defendant Gasior will also serve as Senior EVP, Corporate Development Officer of Farmers and Farmers Bank, will receive an annualized base salary of $315,000, and will participate in Farmers' annual and long-term cash incentive plans.  Defendant Carney will serve as Senior EVP, Chief Banking Officer of Farmers and Farmers Bank, will receive an annualized salary of $300,000, and will participate in Farmers' annual and long-term cash incentive plans.  Following the Proposed Transaction, defendants Gasior and Carney will receive time-based cash retention awards from Farmers of $425,000 and $800,000, respectively.

31.     Moreover, Cortland insiders stand to reap substantial financial benefits for securing the deal with Farmers.  Pursuant to the Merger Agreement, all outstanding Company restricted stock shares will vest and convert into the right to receive the Merger Consideration.  The following table summarizes the value of Company restricted stock shares Company insiders stand to receive:

| Name | Number of Shares of Unvested Restricted Stock | Estimated Dollar Value of Restricted Stock ($)[1] |
|---|---:|---:|
| Timothy Carney | 18,040 | $ 490,327 |
| Stanley P. Feret | 8,128 | 220,919 |
| James M. Gasior | 19,138 | 520,171 |
| David J. Lucido | 8,477 | 230,405 |
| **Total** | **53,783** | **$ 1,461,822** |

32. Further, shortly after the merger, certain executive officers of Cortland will receive restricted stock grants from Farmers, as set forth in the following table:

| Name | Salary ($) | Award As a % of Salary | Dollar Value of Award ($) |
|---|---|---|---|
| James M. Gasior | 315,000 | 65% | 204,750 |
| Timothy Carney | 296,950 | 65% | 193,018 |
| David J. Lucido | 190,110 | 45% | 85,550 |

33. In addition, if they are terminated in connection with the merger, Cortland's named executive officers will receive substantial cash severance payments, as set forth in the following table:

| Name | Cash (1) ($) | Equity (2) ($) | Pension Non-Qualified Deferred Compensation ($) (3) | Perquisites/ benefits ($) (4) | Other (5) ($) | Total ($) |
|---|---|---|---|---|---|---|
| James M. Gasior | $ 900,000 | $ 520,171 | $ 1,339,152 | — | $63,798 | $ 2,823,121 |
| Timothy Carney | $ 450,000 | $ 490,327 | $ 1,122,290 | — | $63,364 | $ 2,125,981 |
| David J. Lucido | $ 475,276 | $ 230,405 | $   868,855 | $ 53,567 | — | $ 1,628,103 |

**The Proxy Statement Contains Material Misstatements and Omissions**

34. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Cortland's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

35. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Cortland's and Farmers' financial projections, which are wholly omitted, and the data and inputs underlying the financial analyses performed by the Company's financial advisor Piper Sandler; and (ii) the background of the Proposed Transaction.

*Material Omissions Concerning Cortland's and Farmers' Financial Projections and Piper Sandler's Financial Analyses*

36. The Proxy Statement wholly omits the financial projections for Cortland and Farmers.

37. For example, the Proxy Statement sets forth that in connection with its fairness opinion, Piper Sandler reviewed:

- certain internal financial projections for Cortland for the years ending December 31, 2021 through December 31, 2024 with an estimated net income growth rate for the year ending December 31, 2025 and estimated dividends per share for the years ending December 31, 2021 through December 31, 2025, as provided by the senior management of Cortland;

- publicly available mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022, as well as estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025 and estimated dividends per share for Farmers for the years ending December 31, 2023 through December 31, 2025, as provided by the senior management of Farmers;

- the pro forma financial impact of the Merger on Farmers based on certain assumptions relating to transaction expenses, cost savings and purchase accounting adjustments, as well as estimated net income for Cortland for the years ending December 31, 2021 through December 31, 2025, as provided by the senior management of Farmers[.]

Proxy Statement at 51. Yet, the Proxy Statement fails to disclose any financial forecasts related to Cortland or Farmers. In addition, the Proxy Statement fails to disclose quantification of the pro forma financial impact of the merger on Farmers, including the anticipated cost savings to result from the Proposed Transaction.

38. The Proxy Statement also fails to disclose material information concerning Piper Sandler's financial analyses.

39. The Proxy Statement describes Piper Sandler's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Piper Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cortland's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any,

to place on Piper Sandler's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

40. With respect to Piper Sandler's *Cortland Comparable Company Analysis*, *Farmers Comparable Company Analysis*, and *Analysis of Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each company and transaction observed in the respective analyses.

41. With respect to Piper Sandler's *Net Present Value Analyses* of Cortland, the Proxy Statement fails to disclose: (i) the estimated dividends per share for the years ending December 31, 2021 through December 31, 2025, as provided by Cortland senior management; (ii) the estimated net income growth rate for the year ending December 31, 2025; (iii) Cortland's earnings and tangible book value for the year ending December 31, 2025, utilized to derive the terminal value; (iv) quantification of the terminal values for Cortland; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 15.0%.

42. With respect to Piper Sandler's *Net Present Value Analyses* of Farmers, the Proxy Statement fails to disclose: (i) the mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022; (ii) the estimated dividends per share for the years ending December 31, 2023 through December 31, 2025, as provided by Farmers senior management; (iii) the estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025; (iv) Farmers' earnings and tangible book value for the year ending December 31, 2025, utilized to derive the terminal value; (v) quantification of the terminal values for Farmers; and (vi) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 15.0%.

43. With respect to Piper Sandler's *Pro Forma Transaction Analysis*, the Proxy Statement fails to disclose: (i) the estimated net income for Cortland for the years ending December 31, 2021 through December 31, 2025; (ii) the mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022; (iii) the estimated dividends per share for the years ending December 31, 2023 through December 31, 2025, as provided by Farmers senior management; (iv) the estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025; and (v) quantification of the (a) accretion to Farmers' estimated earnings per share for the years ending December 31, 2022 through December 31, 2025, (b) dilution to Farmers' estimated tangible book value per share at close and at December 31, 2022, 2023 and 2024, and (c) accretion to Farmers' estimated tangible book value per share at December 31, 2025.

44. The omission of this information renders the statements in the "Opinion of Cortland's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

45. The Proxy Statement omits material information regarding the background process leading to the Proposed Transaction.

46. For example, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements with any interested bidders during the background process that include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any interested parties from submitting a topping bid for the Company.

47. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a

superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if the action has been done, is omitted from the Proxy Statement.

48. Any reasonable Cortland stockholder would deem the fact that a potential topping bidder for the Company, may be precluded from making a topping bid for the Company, to significantly alter the total mix of information.

49. The omission of this material information renders the statements in the "Background of the Merger and Cortland's Reasons for the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Cortland will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

#### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Cortland's and Farmers' financial projections, which are wholly omitted, the data and inputs underlying the financial analyses performed by the Company's financial advisor Piper Sandler, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

55. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. The Individual Defendants acted as controlling persons of Cortland within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cortland, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

61. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cortland stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cortland, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cortland stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 13, 2021                                         **WEISSLAW LLP**

By _____
Richard A. Acocelli
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*