UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CHARLES REINHARDT, | : |
| | : |
| | : Case No. 1:21-cv-08460-MKV |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CORTLAND BANCORP INC., HICHAM | : |
| CHAHINE, JAMES E. HOFFMAN, III, JOSEPH | : |
| E. KOCH, TIMOTHY K. WOOFTER, JAMES M. | : |
| GASIOR, RICHARD B. THOMPSON, JOSEPH | : |
| P. LANGHENRY, THOMAS P. PERCIAK, | : |
| TIMOTHY CARNEY, DAVID C. COLE, NEIL J. | : |
| KABACK, and ANTHONY R. VROSS, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**WEISSLAW LLP**
Richard A. Acocelli
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF FACTS ..................................................................................2

        A.      Cortland's Background ...........................................................................2

B.      Defendants Filed the Materially Incomplete Proxy ...........................................3

III.    LEGAL ARGUMENT..........................................................................................3

        A.      The Preliminary Injunction Standard.....................................................3

        B.      Plaintiff Is Likely To Succeed On The Merits Of His Disclosure Claims..............6

                1.      Cortland's and Farmers' Financial Projections............................8

                2.      Piper Sandler's Financial Analyses ........................................12

        C.      The Balance of Hardships Tips in
                Plaintiff's Favor and an Injunction Is in the Public Interest .................................15

        D.      No Security Is Necessary ....................................................................17

IV.     CONCLUSION....................................................................................................18

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                        <u>**Page(s)**</u>

*Acierno v. Mitchell, No. 92-384-SLR,*
  1992 U.S. Dist. LEXIS 20381 (D. Del. Dec. 30, 1992) .......................................... 3

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.,*
  2014 U.S. Dist. LEXIS 156227 at *51 (C.D. Cal. Nov. 4, 2014) .......................... 16

*Azar v. Blount Int'l, Inc., No. 3:16-cv-483-SI,*
  2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) ............................................ 8

*Bank of N.Y. Co. v. N.E. Bancorp, Inc.,*
  9 F.3d 1065 (2d Cir. 1993) ...................................................................................... 5

*Brown v. Brewer,*
  2008 U.S. Dist. LEXIS 108904 at *19 (C.D. Cal. Jul. 14, 2008) .......................... 10

*Campbell v. Transgenomic, Inc.,*
  916 F.3d 1121 (8th Cir. 2019) ............................................................................... 11

*Chambers v. Briggs & Stratton Corp.,*
  863 F. Supp. 900 (E.D. Wis. 1994) ......................................................................... 6

*David P. Simonetti Rollover IRA v. Margolis, No. 3694-VCN,*
  2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) .................................. 10, 12, 16

*Fishman v. Paolucci,*
  No. 14-3715, 628 Fed. Appx. 797,
  2015 U.S. App. LEXIS 18009 (2d Cir. Oct. 15, 2015) ........................................... 4

*ICN Pharmaceuticals, Inc. v. Khan,*
  2 F.3d 484 (2d Cir. 1993) ........................................................................................ 5

*In re Appraisal of Dell Inc.,*
  2016 Del. Ch. LEXIS 81 (Del. Ch. May 31, 2016) ............................................... 14

*In re Art Techs. Grp. Inc., S'holders Litig.,*
  2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010) ............................................ 17

*In re BioClinica, Inc. S'holder Litig.,*
  2013 Del. Ch. LEXIS 52 (Del. Ch. Feb. 25, 2013) ................................................. 8

*In re Netsmart Techs., Inc., S'holders Litig.,*
  924 A.2d 171 (Del. Ch. 2007) ...................................................................... 8, 10, 15

*In re Pure Res., Inc. S'holders Litig.,*
  808 A.2d 421 (Del. Ch. 2002) ........................................................................ 12, 13

*In re Staples, Inc. S'holders Litig.*,
   792 A.2d 934 (Del. Ch. 2001) ........................................................................6, 8

*Int'l Controls Corp. v. Vesco*,
   490 F.2d 1334 (2d Cir. 1974) ............................................................... 17

*K Lesbian & Gay Org. v. Giuliani*,
   143 F.3d 638 (2d Cir. 1998) .................................................................. 3-4

*Karp v. First Conn. Bancorp, Inc.*,
   2019 U.S. Dist. LEXIS 162819 (D. Md. Sept. 24, 2019) ................................ 10-11

*La. Mun. Police Employees' Ret. Sys. v. Crawford*,
   2007 Del. Ch. LEXIS 28 (Del. Ch. Feb. 13, 2007) .................................... 17

*Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*,
   2009 Del. Ch. LEXIS 210 .......................................................................... 14

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
   148 F. Supp. 2d 1141 (D. Kan. 2001) ........................................................ 16

*Lovenheim v. Iroquois Brands, Ltd.*,
   618 F. Supp. 554 (D.D.C. 1985) .......................................................... 17-18

*MAI Basic Four, Inc. v. Prime Computer, Inc.*,
   871 F.2d 212 (1st Cir. 1989) .......................................................................... 5

*Malletier v. Burlington Coat Factory Warehouse Corp.*,
   426 F.3d 532 (2d Cir. 2005) ......................................................................... 4

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
   11 A.3d 1175 (Del. Ch. May 13, 2010) .................................................... 9

*Marshall Field & Co. v. Icahn*,
   537 F. Supp. 413 (S.D.N.Y. 1985) ......................................................... 5

*Money Group, Inc. v. Highfields Capital Mgmt., L.P.*,
   368 F.3d 138 (2d Cir. 2004) ....................................................................... 5

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................... 17

*NextPoint Advisor, L.P. v. TICC Capital Corp.*, Civil Action No. 3:15-cv-1465,
   2015 U.S. Dist. LEXIS 144126 (D. Conn. Oct. 23, 2015) ...................................... 4

*Random House, Inc. v. Rosetta Books LLC*,
   283 F.3d 490 (2d Cir. 2002) ....................................................................... 4

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) .......................................................................... 4

*SEC v. Mayhew*,
   121 F.3d 44 (2d Cir. 1997) ........................................................................ 7

*SEC v. Murphy*,
   626 F.2d 633 (9th Cir. 1980) .................................................................... 10

*SEC v. Nat'l Student Mktg. Corp.*,
   457 F. Supp. 682 (D.D.C. 1978) .............................................................. 10

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) .................................................................. 10

*Sides v. Religious Accommodation Comm., No. 1:06-CV-2370*,
   2007 U.S. Dist. LEXIS 37873 (M.D. Pa. May 24, 2007) ........................ 17

*Silberstein v. Aetna, Inc., No. 12-CV-8759*
   *(AJN)*, 2014 WL 1388790 (S.D.N.Y. Apr. 9, 2014) .............................. 4

*Sonesta Int'l Hotels Corp. v. Wellington Assoc.*,
   483 F.2d 247 (2d Cir. 1973) .................................................................... 16

*St. Louis Police Ret. Sys. v. Severson, No. 12-CV-5086 YGR*,
   2012 U.S. Dist. LEXIS 152392 (N.D. Cal. Oct. 23, 2012) .................... 5-6

*Tradescape.com v. Shivaram*,
   77 F. Supp. 2d 408 (S.D.N.Y. 1999) ....................................................... 15

*TSC Industries, Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ........................................................................ 6, 7, 15

*United Paperworkers Int'l Union v. Int'l Paper*,
   985 F. 2d 1190 (2d Cir. 1993) ............................................................... 7-8

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998) .................................................................. 10

*Venture Res. Grp. v. Greater N.J. Reg'l Multiple Listing Serv., No. 95-0401*
   *(MLP)*, 1995 U.S. Dist. LEXIS 21177 (D.N.J. Aug. 24, 1995) ............ 17

*Virginia Bankshares v. Sandberg*,
   50 U.S. 1083 (1991) ................................................................................. 7

*XL Specialty Ins. Co. v. Level Global Investors, L.P.*,
   874 F. Supp. 2d 263 (S.D.N.Y. 2012) ................................................... 4-5

## Statutes & Regulations

Fed. R. Civ. P. 65(b)(1)(A) ............................................................................ 3

Federal Rule of Civil Procedure 65 ............................................................... 3

Federal Rule of Civil Procedure 65(c) ......................................................... 17

Rule 14 ................................................................................................................ 2, 5, 6

Section 20(a) ............................................................................................................. 3

Section 14(a) ............................................................................................. 2, 3, 6, 11

Section 13(d) ............................................................................................................ 5

**Miscellaneous**

*Steven M. Davidoff, Fairness Opinions,*
    55 Am. U.L. Rev. 1557 (Aug. 2006) ................................................................ 14

## I.   **INTRODUCTION**

Plaintiff Charles Reinhardt ("Plaintiff") respectfully submits this Memorandum in support of his Motion for a Preliminary Injunction.  As set forth below, Plaintiff seeks to temporarily enjoin the **October 26, 2021,** stockholder vote (the "Stockholder Vote") on the proposed transaction, whereby Cortland Bancorp Inc ("Cortland" or the "Company") will be acquired by Farmers National Banc Corp. ("Farmers") through its newly formed subsidiary FMNB Merger Subsidiary IV, LLC ("Merger Sub") (the "Proposed Transaction"), until defendants disclose currently omitted, material information to Plaintiff and Cortland's other stockholders.  On June 22, 2021, Cortland's Board of Directors (the "Board" or "Individual Defendants")[1] caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, Farmers will acquire all outstanding shares of Cortland for (i) 1.75 shares of FMNB common stock, or (ii) $28.00 in cash for each Cortland share they own, subject to proration such that 75% of the outstanding shares of Cortland common stock are converted into Farmers common shares (the "Merger Consideration").

On September 23, 2021 defendants filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction, which recommends that Cortland stockholders vote in favor of the Proposed Transaction, but omits or misrepresents material information that is preventing Cortland's stockholders from making a fully informed decision with respect to the Proposed Transaction.[2]   Specifically, the Proxy omits material information concerning: (i) Cortland

---

[1] The Individual Defendants are Hicham Chahine, James E. Hoffman, III, Joseph E. Koch, Timothy K. Woofter, James M. Gasior, Richard B. Thompson, Joseph P. Langhenry, Thomas P. Perciak, Timothy Carney, David C. Cole, Neil J. Kaback, and Anthony R. Vross.

[2] The Proxy is attached as Exhibit 1 to the Declaration of Richard A. Acocelli in Support of Plaintiff's Motion for a Preliminary Injunction ("Decl."). As of the filing of this Motion, the issues

management's and Farmers management's financial projections; and (ii) the valuation analyses performed by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler") based on those projections.  Because the Stockholder Vote is set to take place on October 26, 2021, Plaintiff respectfully requests that a hearing for oral argument on Plaintiff's application be scheduled in advance of the October 26, 2021, Stockholder Vote.[3]

Plaintiff has alleged that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder in connection with their dissemination of the Proxy, and Plaintiff now seeks injunctive relief to enjoin the Stockholder Vote pending the dissemination of supplemental disclosures to correct the materially misleading Proxy.  If defendants disclose the information requested herein before October 26, 2021, the Stockholder Vote need not even be delayed.

## II.   **STATEMENT OF FACTS**[4]

### A.   **Cortland's Background**

 Cortland is the financial holding company for The Cortland Savings and Banking Company ("Cortland Bank" or the "Bank").  ¶ 9.  Cortland owns all of the outstanding shares of the Bank and Cortland's principal activity is to own, manage and supervise the Bank.  ¶25. Cortland Bank is a full service, state-chartered bank engaged in commercial and retail banking. Cortland Bank's services include checking accounts, savings accounts, time deposit accounts,

---

asserted in Plaintiff's Complaint for Violation of the Federal Securities Laws (the "Complaint") filed on October 13, 2021, have not been corrected.

[3] The Parties communicated prior to the filing of this Motion.  Counsel for Defendants notified Plaintiff's counsel that Defendants oppose Plaintiff's Motion.

[4] Citations to "¶ __" refer to paragraphs in Plaintiff's Complaint.  To the extent not otherwise defined here, capitalized terms have the same meaning as in the Complaint.

commercial, mortgage and installment loans, night depository, automated teller services, safe deposit boxes and other miscellaneous services normally offered by commercial banks.  ¶26.

### B.      Defendants Filed the Materially Incomplete Proxy

In connection with the Proposed Transaction, on September 23, 2021, defendants filed the Proxy with the SEC, recommending that the Company's stockholders vote in favor of the Proposed Transaction.  ¶3.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to cast an informed vote regarding the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.[5]  Specifically, the Proxy omits material information concerning both companies' financial projections and the valuation analyses performed by Piper Sandler.  ¶¶ 36-49.  This omitted information, if properly disclosed, would significantly alter the total mix of information available to Cortland's stockholders.

### III.     LEGAL ARGUMENT

### A.      The Preliminary Injunction Standard

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a preliminary injunction is to provide relief temporarily ending resolution of a case on the merits.

---

[5] Plaintiff is only required to demonstrate a likelihood of success on one claim against one defendant, and therefore the court need not consider Plaintiff's Section 20(a) claim in order to enjoin the Stockholder Vote. *See Acierno v. Mitchell*, No. 92-384-SLR, 1992 U.S. Dist. LEXIS 20381, at *48-49 (D. Del. Dec. 30, 1992) ("In order for plaintiff to succeed in his request for injunctive relief, he needed to demonstrate a probability of success on the merits of only one claim.").

*See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 645 (2d Cir. 1998) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  In the context of a corporate board of directors' solicitation of shareholder action in change-of-control transactions, the United States Supreme Court has recognized that the "[u]se of a solicitation that is materially misleading is itself a violation of law," and injunctive relief is available to remedy such a defect if timely sought.  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383 (1970).

The Second Circuit has held that, in cases where a plaintiff seeks an injunction to maintain the status quo, a party must show: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *NextPoint Advisor, L.P. v. TICC Capital Corp.*, Civil Action No. 3:15-cv-1465, 2015 U.S. Dist. LEXIS 144126 (D. Conn. Oct. 23, 2015); *Fishman v. Paolucci*, No. 14-3715, 628 Fed. Appx. 797, 800, 2015 U.S. App. LEXIS 18009 (2d Cir. Oct. 15, 2015); *Silberstein v. Aetna, Inc.*, No. 12-CV-8759 (AJN), 2014 WL 1388790, at *2 (S.D.N.Y. Apr. 9, 2014); *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted); *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002).  A court also may examine whether the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction and the public interest in granting an injunction.  *See Salinger v. Colting,* 607 F.3d 68, 79-80 (2d Cir. 2010).

A showing of irreparable harm is the most important factor to show to obtain injunctive relief, but "the decision to grant or to deny a preliminary injunction depends in part on a flexible interplay between the likelihood of success and irreparable harm," *XL Specialty Ins. Co. v. Level*

*Global Investors, L.P.*, 874 F. Supp. 2d 263, 270-71 (S.D.N.Y. 2012) (quoting *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943, 945 (2d Cir. 1969)).   Thus, a clear likelihood of success on the merits requires a relatively lesser showing of harm.

Courts in the Second Circuit have established that a change-of-control transaction influenced by noncompliance with the disclosure provisions of the various federal securities laws can constitute irreparable harm.  *See Money Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138 (2d Cir. 2004) (violation of Rule 14a-3(a) would cause irreparable harm); *ICN Pharmaceuticals, Inc. v. Khan*, 2 F.3d 484, 489 (2d Cir. 1993) ("[A]n injunction will issue for a violation of §13(d) only on a showing of irreparable harm to the interests which that section seeks to protect.   Those interests are fully satisfied when the shareholders receive the information required to be filed."); *see also Bank of N.Y. Co. v. N.E. Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) ("[W]here a merger has been consummated, restoration of the *status quo* may be impossible."); *Marshall Field & Co. v. Icahn*, 537 F. Supp. 413, 416 (S.D.N.Y. 1985) (concluding that "irreparable harm" exists in a change-of-control transaction if shareholders are denied "important and legally required information as to [a group's] intentions which may affect their judgment as to whether the stock should be sold, bought, or held").

Courts across the country have also found that this threat of irreparable harm is sufficient to enjoin a corporate transaction until defendants provide additional information concerning the transaction to shareholders.  *See e.g., MAI Basic Four, Inc. v. Prime Computer, Inc.*, 871 F.2d 212, 218 (1st Cir. 1989) (noting "the utility of injunctive relief to prevent violations of disclosure requirements . . . to the extent . . . shareholders may be deprived of material information required to be disclosed" in change-of-control transactions); *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086 YGR, 2012 U.S. Dist. LEXIS 152392, at *16-17 (N.D. Cal. Oct. 23, 2012) ("disclosure

deficiencies cannot be remedied effectively by an 'after-the-fact damages' case.  Thus, 'it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.'") (quoting *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001)); *Chambers v. Briggs & Stratton Corp.*, 863 F. Supp. 900, 905 (E.D. Wis. 1994) ("Since the defendant's proxy statement contained a material omission, the shareholder vote will go forward on the basis of potentially misleading information unless the court grants the plaintiff's request for injunctive relief.  The Supreme Court has recognized that use of solicitation which is materially misleading poses the kind of irreparable injury to stockholders which can justify injunctive relief prior to a shareholder's meeting.") (citing *Mills*, 396 U.S. at 383.

For the foregoing reasons, Plaintiff has made a sufficient showing on each factor.

### B.    Plaintiff Is Likely To Succeed On The Merits Of His Disclosure Claims

In his Complaint, Plaintiff alleges defendants violated Section 14(a) of the Exchange Act by filing the materially incomplete and misleading Proxy soliciting Cortland stockholders to vote in favor of the Proposed Transaction.  To establish a likelihood of success on the merits, a plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent.'" *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).  As outlined below, Plaintiff is likely to succeed on his claims that the Proxy omits material information rendering important statements made therein misleading, in violation of the Exchange Act and Rule 14a-9.

For a non-disclosure to constitute a violation under the Exchange Act and Rule 14a-9 promulgated thereunder, the omitted fact must be "material."  In *TSC Industries, Inc. v. Northway,*

*Inc.*, 426 U.S. 438 (1976), the United States Supreme Court articulated the materiality standard as

follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable
> shareholder would consider it important in deciding how to vote.  This standard is
> fully consistent with *Mills'* general description of materiality as a requirement that
> "the defect have a significant *propensity* to affect the voting process."  It does not
> require proof of a substantial likelihood that disclosure of the omitted fact would
> have caused the reasonable investor to change his vote.  What the standard does
> contemplate is a showing of a substantial likelihood that, under all the
> circumstances, the omitted fact would have assumed actual significance in the
> deliberations of the reasonable shareholder.  Put another way, there must be a
> substantial likelihood that the disclosure of the omitted fact would have been
> viewed by the reasonable investor as having significantly altered the "total mix"
> of information made available.

*Id.* at 449.   The materiality standard is an objective one, measured from the point of view of the

reasonable investor, not from the subjective views of the companies and directors that issue the

proxy statements.  *Id.* at 445 ("The question of materiality, it is universally agreed, is an objective

one, involving the significance of an omitted or misrepresented fact to a reasonable investor.").

In the context of a merger, where information is often speculative and tenuous, materiality

depends on balancing the probability that an event will occur with the magnitude of the event in

light of total company activity.  *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997).  However, because

a merger is such an important event to a company, information regarding the merger becomes

"material at an earlier stage" than it would in other types of transactions.  *Id.* (quoting *SEC v. Geon*

*Indus., Inc.*, 531 F.2d 39, 47 (2d Cir. 1976)).  Since information is often judged by its source, inside

information regarding a merger, even if it is not detailed, takes on an added charge because it is

inside information.  *SEC v. Mayhew*, 121 F.3d at 52.  Thus, "[o]nce the proxy statement purports

to disclose the factors considered [by the board of directors] . . . there is an obligation to portray

them accurately." *Virginia Bankshares v. Sandberg*, 50 U.S. 1083, 1098 n.7 (1991) (quoting *Berg*

*v. First Am. Bankshares, Inc.*, 796 F.2d 489, 496 (D.C. Cir. 1986)); *United Paperworkers Int'l Union v. Int'l Paper*, 985 F. 2d 1190, 1198 (2d Cir. 1993).

Here, the Proxy filed by defendants with the SEC fails to disclose material information regarding Cortland's and Farmers' financial projections and the key financial analyses performed by Cortland's financial advisor in connection with the Proposed Transaction.  This information, if disclosed, would significantly alter the total mix of information available to Cortland's stockholders.

### 1.  Cortland's and Farmers' Financial Projections

The Proxy fails to disclose material information with respect to Cortland's and Farmers' financial projections.  It is well-settled that financial projections are amongst the most important information shareholders need in order to assess the fairness of a corporate transaction, and are therefore material to shareholders. *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *16 (D. Or. Mar. 20, 2017) ("The established case law shows the importance (and, hence,materiality) of financial projections to shareholders' decision-making."); *see In re Netsmart Techs., Inc., S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) (noting that management projections are important because management has "meaningful insight into their firms' futures that the market [does] not"); *Staples*, 792 A.2d at 958 n.44 ("One suspects that the projections are the information that most stockholders would find the most useful to them.").  Importantly, the failure to disclose financial projections—and particularly future cash flow projections—is sufficient to sustain injunctive relief in merger transactions.  *In re BioClinica, Inc. S'holder Litig.*, 2013 Del. Ch. LEXIS 52, at *18 (Del. Ch. Feb. 25, 2013) ("Generally, the failure of a company to disclose management's financial projections in its proxy materials, when those projections have been relied on by a financial advisor to render a fairness opinion, is a material omission that will

sustain injunctive relief if not corrected."); *see also Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. May 13, 2010).

Critically, the Proxy *wholly omits* the financial projections for Cortland and Farmers relied upon by the Company's financial advisor, Piper Sandler, in performing its valuation analyses to support its opinion that the Proposed Transaction is fair to the Company's stockholders. Specifically, the Proxy indicates that in connection with rendering its fairness opinion, Piper Sandler reviewed:

- certain internal financial projections for Cortland for the years ending December 31, 2021 through December 31, 2024 with an estimated net income growth rate for the year ending December 31, 2025 and estimated dividends per share for the years ending December 31, 2021 through December 31, 2025, as provided by the senior management of Cortland;

- publicly available mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022, as well as estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025 and estimated dividends per share for Farmers for the years ending December 31, 2023 through December 31, 2025, as provided by the senior management of Farmers;

- the pro forma financial impact of the Merger on Farmers based on certain assumptions relating to transaction expenses, cost savings and purchase accounting adjustments, as well as estimated net income for Cortland for the years ending December 31, 2021 through December 31, 2025, as provided by the senior management of Farmers[.]

*See* Proxy at 51. Yet, the Proxy wholly omits the financial projections for each of Cortland and Farmers provided by their respective senior management, as well as the anticipated cost savings expected to result from the Proposed Transaction. ¶37.

It is well-settled that the projections that were relied upon by the financial advisor in performing its financial analyses underlying its fairness opinion are highly important information to stockholders. *David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 Del. Ch.

LEXIS 78, at *30 (Del. Ch. June 27, 2008) ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders because any valuation analysis is heavily dependent upon the projections utilized."); *Netsmart*, 924 A.2d at 203-04 (requiring the disclosure of cash flows and stating that "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed"). "Perhaps nothing is more relevant to a vote on whether or not to approve a merger than the earnings picture of the acquiring company, at least to the stockholder of the company being acquired.'" *SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 707 (D.D.C. 1978) (quoting *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 547 (2d Cir. 1973)); *see also SEC v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011) ("Information regarding a company's financial condition is material to investment."); *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980) ("Surely the materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge."). Investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest. *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998) ("Surely, the average investor's interest would be piqued by a company's internal projections…"); *see also Brown v. Brewer*, 2008 U.S. Dist. LEXIS 108904, at *19 (C.D. Cal. Jul. 14, 2008) (same).

Recently, the court in *Karp v. First Conn. Bancorp, Inc.*, 2019 U.S. Dist. LEXIS 162819, at *12 (D. Md. Sept. 24, 2019) denied defendants' motion to dismiss section 14(a) claim on this basis, finding it plausible that missing cash flow information was important to a reasonable shareholder when deciding how to vote on the merger. The Eighth Circuit recently agreed on this fundamental point, and its reasoning in the *Transgenomic* opinion is equally applicable here:

Pre-merger Precipio's projected net income/loss is not trivial information. Net income "may be of more significance to investors" than revenue. *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 830 (8th Cir. 2003) (finding revenue overstatement in earning statements materially misleading). This court has considered net income to be among the three most valuable figures in determining the fairness of an acquisition under the Clayton Act. *See Mississippi River Corp. v. FTC*, 454 F.2d 1083, 1086 (8th Cir. 1972) (considering assets, revenue, and net income). "A fact is material 'when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *In re Stratasys Ltd.*, 864 F.3d at 882, *quoting Matrixx Initiatives, Inc.*, 563 U.S. at 38. The disclosure of Precipio's net income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger Precipio's net income/loss. It cannot be determined as a matter of law "whether a reasonable investor would have considered [pre-merger Precipio's projected net income/loss] significant at the time." *Parnes*, 122 F.3d at 547.

*Campbell v. Transgenomic, Inc*., 916 F.3d 1121, 1125 (8th Cir. 2019).

Here, Cortland stockholders must vote on a transaction in which they have the option to receive cash or stock for their shares and information regarding the financial attractiveness of the deal is of particular importance. This is because Cortland stockholders must measure the relative attractiveness of retaining their shares versus receiving a cash payment, a calculus heavily dependent on the stockholders' assessment of the Company's financial forecasts or of retaining their shares versus receiving Farmers' stock and investing in the combined company, a calculus heavily dependent on the stockholders' assessment of Farmers' and the Company's financial forecasts.

Accordingly, the financial projections for Cortland and Farmers are plainly material and must be provided to Cortland's stockholders so that they can fully and fairly assess the fairness of the Merger Consideration.

## 2.    Piper Sandler's Financial Analyses

The Proxy also omits material information regarding the key financial analyses performed by Piper Sandler in support of its fairness opinion.  ¶¶ 41-43.  Financial advisors' "analyses . . .

usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer."  *Id.*; *Simonetti*, C.A. No. 3694, 2008 Del. Ch. LEXIS at *25 ("The financial advisor's opinion of financial fairness for a proposed transaction is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders and, in turn, for the stockholders' decisions on the appropriateness of the transaction.").  Thus, "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely."  *In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).

Notably, the Proxy fails to disclose material information regarding Piper Sandler's *Net Present Value Analyses* for each of Cortland and Farmers.  ¶¶ 75, 77.  The Proxy sets forth that in performing its *Net Present Value Analyses* of Cortland, Piper Sandler assumed that

> Cortland performed in accordance with internal financial projections for Cortland for the years ending December 31, 2021 through December 31, 2024 with an estimated net income growth rate for the year ending December 31, 2025 and estimated dividends per share for the years ending December 31, 2021 through December 31, 2025, as provided by the senior management of Cortland.  To approximate the terminal value of a share of Cortland common stock at December 31, 2025, Piper Sandler applied price to 2025 earnings multiples ranging from 9.0x to 14.0x and multiples of December 31, 2025 tangible book value ranging from 90% to 140%.

Proxy at 58.  Moreover, in connection with its *Net Present Value Analyses* of Farmers, Piper Sandler assumed that

> Farmers performed in accordance with publicly available mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022, as well as estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025 and estimated dividends per share for Farmers for the years ending December 31, 2023 through December 31, 2025, as provided by the senior management of Farmers. To approximate the terminal value of a share of Farmers common stock at December 31, 2025, Piper Sandler

applied price to 2025 earnings multiples ranging from 10.5x to 18.0x and multiples of December 31, 2025 tangible book value ranging from 150% to 225%.

*Id.* at 59.

The Proxy fails, however, to disclose the key inputs to each of Piper Sandler's analyses. With respect to Piper Sandler's *Net Present Value Analyses* of Cortland, the Proxy fails to disclose: (i) Cortland's estimated dividends per share for the years ending December 31, 2021 through December 31, 2025; (ii) Cortland's estimated net income growth rate for the year ending December 31, 2025; and (iii) Cortland's 2025 earnings and tangible book value, used to calculate the terminal values for the Company. ¶41

Similarly, with respect to Piper Sandler's *Net Present Value Analyses* of Farmers, the Proxy fails to disclose; (i) the mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022; (ii) Farmers' estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025; (iii) estimated dividends per share for Farmers for the years ending December 31, 2023 through December 31, 2025; and (iv) Farmers' 2025 earnings and tangible book value used to calculate the terminal values for Farmers. ¶42.

Net present value analyses are nearly identical in form and function to *discounted cash flow* analyses, and were provided to the Board and summarized for stockholders in the Proxy for the same reasons: to permit knowledgeable assessment of the inherent value of the Company compared to Cortland stockholders' investment in the combined company if the transaction was effectuated.[6]

---

[6] The *Net Present Value Analyses* performed by Piper Sandler here discounted projected *dividend* streams back to current value rather than projected *cash flows* (as would be typically done in a discounted cash flow analysis), but, the function of the respective valuation analyses are virtually identical.

Since it is well established that a discounted cash flow analysis is the most significant analysis upon which a fairness opinion can rest,[7] when net present value analyses are the basis of a fairness opinion (as they were here) such analyses are equally critical and require the same transparency of disclosure.

Moreover, with respect to Piper Sandler's *Pro Forma Transaction Analysis*, the Proxy fails to disclose: (i) the estimated net income for Cortland for the years ending December 31, 2021 through December 31, 2025; (ii) the mean analyst earnings per share and dividends per share estimates for Farmers for the years ending December 31, 2021 and December 31, 2022; (iii) the estimated dividends per share for the years ending December 31, 2023 through December 31, 2025, as provided by Farmers senior management; and (iv) the estimated long-term annual earnings per share and balance sheet growth rates for the years ending December 31, 2023 through December 31, 2025.  ¶43.

There is a substantial likelihood that a reasonable Cortland stockholder would consider this omitted information important in making their voting decision on the Proposed Transaction.  *TSC Indus.*, 426 U.S. at 449; *Netsmart*, 924 A.2d at 199.  Accordingly, Plaintiff is likely to succeed on his claims.

---

[7] Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1575-76 (Aug. 2006) ("in the corporate control transaction paradigm the most important analysis is, absent unusual circumstances, the discounted cash flow calculus.").  Courts have recognized that the discounted cash flow analysis "is the approach that merits the greatest confidence within the financial community."  *In re Appraisal of Dell Inc.*, 2016 Del. Ch. LEXIS 81, at *148 (Del. Ch. May 31, 2016); *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, 2009 Del. Ch. LEXIS 210, at *1-2 (Del. Ch. Nov. 18, 2009) ("the discounted cash flow analysis [is] arguably the most important valuation metric" for a company's stockholders).

**C.    The Balance of Hardships Tips in
Plaintiff's Favor and an Injunction Is in the Public Interest**

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999).

Here, given that Plaintiff only seeks an order enjoining the Stockholder Vote until defendants provide stockholders with the narrowly tailored and readily available information discussed above, the balance of equities heavily weighs in Plaintiff's favor and an injunction is in the public interest.  Indeed, fully informed stockholder decisions in compliance with federal securities laws are in the best interests of both the stockholders and the shareholding public generally.  *St. Louis Police Ret. Sys.*, 2012 U.S. Dist. LEXIS 152392, at *17.  As another court stated in granting a motion for a preliminary injunction based upon materially incomplete and misleading SEC filings made in connection with a merger transaction:

> If the Court orders corrective disclosures, Defendants would only incur the expense of making those disclosures. An injunction ordering corrective disclosures is also in the public interest, as it prevents an uninformed shareholder vote.  Thus, the Court finds that the potential threat of an uninformed vote in this case presents an irreparable harm, that the balance of equities tips in Plaintiffs' favor, and that the proposed injunction to make corrective disclosures is in the public interest.

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, 2014 U.S. Dist. LEXIS 156227 at *51 (C.D. Cal. Nov. 4, 2014).

And as another district court stated in analogous circumstances:

> [P]laintiff is asking the court to order defendant to make a corrective disclosure filing with the SEC.  Such a filing would take a brief amount of time to prepare and file and would involve little expense.  The hardship to defendant should the injunction issue is thus minimal.  Finally, the court finds that the requested injunction would not be adverse to the public interest.  Indeed, the public interest always lies with the truth.  Again assuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public.

*Lone Star Steakhouse & Saloon, Inc. v. Adams,* 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001).

Absent injunctive relief, Cortland's stockholders will be forced to decide whether to vote their shares in favor of the Proposed Transaction without the material information identified above. In contrast, any required postponement of the Stockholder Vote would delay the consummation of the Proposed Transaction – *if at all* - for only so long as would be necessary for stockholders to digest the newly disclosed information.  Indeed, "when it appears likely that the offer may contain materially misleading statements or omissions as made, the interest of the shareholders and of the public in full disclosure of relevant circumstances renders preliminary injunctive relief an appropriate method of remedying the deficiencies in disclosure before the offer is consummated." *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250-51 (2d Cir. 1973); *see also Simonetti*, 2008 Del. Ch. LEXIS at *47-48 ("Ordinarily, balancing the equities between (a) ordering full and complete disclosure to enable stockholders to make an informed decision and (b) a short delay required to allow additional disclosure is a fairly simple task… the equities clearly favor the interim relief necessary to allow the stockholders the opportunity to be an informed voter[.]").

### D.    No Security Is Necessary

While Federal Rule of Civil Procedure 65(c) provides that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c), "[i]t is well-settled that a district court has 'wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm.'"  *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985

(2d Cir. 1996)) (other citations omitted).  Indeed, courts often "dispense with security where there has been no proof of likelihood of harm to the party enjoined." *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974); *see also La. Mun. Police Employees' Ret. Sys. v. Crawford*, 2007 Del. Ch. LEXIS 28 (Del. Ch. Feb. 13, 2007) (enjoining shareholder vote on a merger due to inadequate disclosures and not requiring that a bond be posted); *In re Art Techs. Grp. Inc., S'holders Litig.*, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010).

Because Plaintiff seeks a brief injunction to enjoin the Stockholder Vote on the Proposed Transaction only so long as necessary to allow Cortland stockholders to receive and absorb the supplemental disclosures, defendants will suffer minimal, if any, financial harm.  Accordingly, Plaintiff respectfully submits that no bond, or at most, a nominal bond, should be required.  *See Sides v. Religious Accommodation Comm.*, No. 1:06-CV-2370, 2007 U.S. Dist. LEXIS 37873 (M.D. Pa. May 24, 2007) (waiving bond requirement where risk of financial harm to defendants was low); *Venture Res. Grp. v. Greater N.J. Reg'l Multiple Listing Serv.*, No. 95-0401 (MLP), 1995 U.S. Dist. LEXIS 21177, at *22 (D.N.J. Aug. 24, 1995) (waiving bond requirement); *Lovenheim v. Iroquois Brands, Ltd.*, 618 F. Supp. 554, 562 (D.D.C. 1985) (requiring shareholder to post one-hundred-dollar bond in connection with preliminary injunction involving deficient proxy statement).

**IV.**     <u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his [Proposed] Order, concurrently filed herewith, enjoining the October 26, 2021, Stockholder Vote on the Proposed Transaction until defendants disclose the material information discussed above.

Dated:  October 19, 2021                                              **WEISSLAW LLP**


                                                                    By  */s/ Richard A. Acocelli*
                                                                    Richard A. Acocelli
                                                                    305 Broadway, 7th Floor
                                                                    New York, New York 10007
                                                                    Tel: (212) 682-3025
                                                                    Fax: (212) 682-3010
                                                                    Email: racocelli@weisslawllp.com

                                                                    *Attorneys for Plaintiff*